[No. 8793-2-I.   Division One.   September 27, 1982.]

ALLAN M. BRASHEAR, ET AL, *Appellants,* v. PUGET SOUND POWER AND LIGHT COMPANY, *Respondent.*

*Abbey & Fox* and *Martin D. Fox,* for appellants.

*Perkins, Coie, Stone, Olsen & Williams, Charles Gordon,* and *Paul Goodrich,* for respondent.

CALLOW, J.—Allan Brashear appeals from an order dismissing with prejudice his suit against Puget Sound Power and Light Company (Puget Power) for injuries he suffered after falling from a power pole charged with electrical current. The suit was dismissed following a trial where the jury in special interrogatories found Puget Power negligent, but determined that the negligence was not the proximate

cause of Brashear's injuries. We hold that Brashear is entitled to judgment notwithstanding the verdict and remand for further proceedings.

Brashear was an experienced cable television installer employed by Viacom Cablevision in Seattle. On December 9, 1978, Brashear went to a Mercer Island house to make a routine installation. The cable wiring was located 22 feet up on a wooden power pole maintained by Puget Power. Three feet beneath the cable wiring was a metal streetlamp pole and a telephone messenger cable. Brashear climbed the pole without gloves or a safety belt. When he reached the streetlamp pole, Brashear tested it for electricity by touching it with the back of his hand. Viacom at the time did not issue voltmeters to its installers for such testing. Detecting no current, Brashear grabbed the power pole with one hand and reached with the other for the telephone messenger cable. When he made contact with the grounded telephone cable he received a strong electrical shock, lost his balance, and fell 20 feet to the ground. Although he suffered no permanent injuries from the shock, Brashear suffered permanently disabling injuries as a result of the fall. The negligence of Brashear is established clearly.

Examination of the power pole after the accident revealed that the streetlight, which had not been inspected in over 3 years, contained birds' nests. The nests had caused a deterioration of the insulation on the wires, causing a leakage of 90 volts of electricity into the metal streetlight standard. The voltage was low enough to escape Brashear's detection until he came in contact with the telephone ground wire, whereupon he received the sudden shock.

Brashear filed suit against Puget Power, alleging negligence in the design, maintenance and repair of the power pole and in failing to warn communications workers of the danger of climbing its power poles. Puget Power claimed that Brashear was contributorially negligent and introduced evidence that Viacom was a negligent third party. To rebut evidence of his own contributory negligence, Brashear

introduced additional evidence of Viacom's negligence in not furnishing voltmeters or providing better training for its cable installers.

After extensive discussion of proposed instructions to the jury, the court suggested the following instruction to deal with the issue of Viacom's alleged negligence:

> If you find that the sole proximate cause of plaintiff's injury was (1) employer Via Com's negligence, if any, in failing to properly instruct plaintiff on safety equipment; (2) plaintiff's negligence, if any; or (3) a concurrence of the two, then you will find for defendant.
>
> If you find, however, that defendant was negligent and its negligence was a proximate cause of plaintiff's injury, then you may not reduce plaintiff's recovery by the percentage of negligence, if any, attributable to Via Com.

Puget Power objected to this instruction on the ground that it went to the theory of the case and particularly emphasized Brashear's theory. Brashear objected to the instruction, arguing that it unduly emphasized Puget Power's theory of the case and imputed Viacom's negligence to Brashear, which might affect the jury's comparative negligence deliberations. He proposed instead the following instruction based on WPI 12.04:

> There may be more than one proximate cause of the same occurrence. If you find the defendant was negligent and such negligence was a proximate cause of the injury or damage to the plaintiff, it is not a defense that some other cause or the act of some other person or company who is not a party to this lawsuit may also have been a proximate cause.
>
> However, if you find that the sole proximate cause of injury or damage to the plaintiff was some other cause or the act of some other person who is not a party to this lawsuit then your verdict should be for the defendant.

The trial court ruled that, inasmuch as both parties objected to the proposed instruction, it would be withdrawn. Over Brashear's objection, the court also ruled that it would not give WPI 12.04, reasoning that the standard proximate cause instruction, WPI 15.01, adequately covered the issue. The proximate cause instruction given provided:

The term "proximate cause" means a cause which in a direct sequence, unbroken by any new independent cause, produces the injury complained of and without which such injury would not have happened.

There may be one or more proximate causes of an injury.

After a 2–week trial, the jury rendered the following verdict:

QUESTION No. 1: Was the defendant Puget Sound Power & Light Company negligent?
ANSWER: Yes.
QUESTION No. 2: Was the negligence of the defendant Puget Sound Power & Light Company a proximate cause of injury or damage to the plaintiff?
ANSWER: No.

Judgment was entered accordingly and the complaint was dismissed with prejudice. The trial court refused to grant judgment notwithstanding the verdict.

Brashear argues that there is no evidence or reasonable inference which justifies the jury's inconsistent verdict. He contends that when the jury found that Puget Power negligently permitted its streetlamp to become charged, it necessarily should have concluded that were it not for such leakage there would have been no electrical shock causing the fall from the pole. Brashear finds no evidence of an intervening cause to which the fall can be attributed and concludes that the jury obviously erred, or misunderstood the instructions, entitling him to judgment notwithstanding the verdict.

Puget Power replies that the jury could have concluded one of two things in its proximate cause decision: (1) that the injury would have occurred regardless of its negligence (e.g., the lamp would have become charged despite more frequent inspection); or (2) that a new independent cause, such as that of Brashear himself or in conjunction with a third party, was the sole superseding cause of the injury. Puget Power points to evidence which shows that Brashear was negligent in not wearing his safety belt and gloves, in touching the lamp at all, or in grabbing onto the telephone

ground wire, acts which could be held to be the sole proximate cause of the accident.

A motion for judgment notwithstanding the verdict admits the truth of the nonmoving party's evidence and all inferences reasonably drawn therefrom; it should be granted when there is no competent evidence nor reasonable inference which would sustain a jury verdict in favor of the nonmoving party. *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 586 P.2d 845 (1978).

> There must be "substantial evidence" as distinguished from a "mere scintilla" of evidence, to support the verdict—*i.e.,* evidence of a character "which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." A verdict cannot be founded on mere theory or speculation. *Arnold v. Sanstol,* 43 Wn.2d 94, 98, 260 P.2d 327 (1953).

*Hojem v. Kelly,* 93 Wn.2d 143, 145, 606 P.2d 275 (1980). *See also Hansen v. Washington Natural Gas Co.,* 95 Wn.2d 773, 632 P.2d 504 (1981).

The jury concluded that Puget Power was at fault in not preventing the streetlamp from becoming energized. There is ample evidence to support that conclusion and no evidence of any other cause of the electrification of the streetlamp than the negligence of Puget Power. Viewed in a light most favorable to Puget Power, the evidence demonstrates that in addition to the negligently electrified streetlamp, negligence can be attributed to both Brashear and Viacom. Viacom at the time did not issue voltmeters nor conduct a thorough training program for its installers; Brashear failed to wear his hard hat or safety gloves when he climbed the pole, and elected to climb in the less safe "free hand" method rather than using the "safety belt" method. Had Brashear belted himself to the power pole when testing the streetlamp for electricity, he might not have fallen when he received the shock. Brashear should have presumed the streetlamp was energized and either avoided it in his climb or used a temporary bond between the streetlight bracket and a ground source. *See* WAC 296–32–320.

■ Despite this considerable evidence of contributory negligence and the third party negligence of Viacom, there is no evidence whatsoever that Brashear's and Viacom's negligence were more than concurring acts of negligence, which cannot relieve Puget Power of liability. Although the intervening acts of the plaintiff may rise to the level of an independent, superseding cause, *Daly v. Lynch,* 24 Wn. App. 69, 600 P.2d 592 (1979), those acts must be "so highly extraordinary or unexpected that it can be said to fall without the realm of reasonable foreseeability as a matter of law". *Smith v. Acme Paving Co.,* 16 Wn. App. 389, 396, 558 P.2d 811 (1976). If the acts of the plaintiff are within the ambit of the hazards covered by the duty imposed upon the defendant, they are foreseeable and do not supersede the defendant's negligence. *Rikstad v. Holmberg,* 76 Wn.2d 265, 456 P.2d 355 (1969). In such instances the plaintiff's acts are contributory and operate only to reduce the plaintiff's recovery, not eliminate it entirely. The intervening acts of third parties are generally concurrent, not superseding, unless the same test of unforeseeability is met. *Maltman v. Sauer,* 84 Wn.2d 975, 530 P.2d 254 (1975).

The evidence here does not support the proposition that the negligent acts of either Brashear or Viacom were so unforeseeable as to supersede Puget Power's negligence. As the party charged with maintaining a power pole also used by others, Puget Power cannot claim that the negligent use of the pole by others was unforeseeable. The evidence shows that Brashear lost his balance and fell when he received the shock from the streetlamp, but the evidence does not support the jury's conclusion that Puget Power's negligence was not a proximate cause of the fall and resulting injuries. Our review of the jury instructions leads us to the conclusion that the instructions were inadequate on the issue of proximate cause which resulted in an inconsistent verdict. The trial court's attempt to fashion a concurring negligence instruction was rejected by both parties, and the court thereafter declined to give an instruction based on WPI 12.04. This was error.

The note to WPI 12.04 provides that the instruction is appropriate where the act of a nonparty to the suit may have concurred with the negligence of the defendant to constitute a proximate cause. The official comment states:

> There may be more than one proximate cause for the same injury. The acts of different persons, though otherwise independent, may concur in producing the same injury. In such a case, all would be liable. They may be held either jointly or severally. The act of a person who is not a party to the suit or any other occurrence or condition is no excuse for the negligence of a defendant if that negligence is one of the concurring proximate causes.

Both Brashear and Puget Power introduced evidence tending to show that Viacom was negligent. Viacom's negligence was at best concurrent, and Brashear was entitled to this instruction. Although the jury was properly advised as to the definition of proximate cause, it was not adequately instructed on how to deal with the situation should it find that Viacom was negligent and that such negligence was also a proximate cause of the accident. The proximate cause instruction, correct as far as it went, did not deal with this situation. The jurors were not instructed as to the full extent of the applicable law, and Brashear was prejudicially hampered in arguing his case to the jury. *Jonson v. Chicago, M., St. P., & Pac. R.R.,* 24 Wn. App. 377, 601 P.2d 951 (1979) stated that the failure to instruct the jury on the issue of multiplicity of proximate causes prejudices a plaintiff's presentation to the jury. The segment in *Jonson* at page 380 (quoting *Warren v. Parks,* 31 N.C. App. 609, 615, 230 S.E.2d 684 (1976)) is especially apropos here. Therein it was stated:

> We cannot agree with the implication in defendants' contention that the use of the article "a" was sufficient to inform the jury on the law of concurring negligence and multiple proximate causes. The error in the charge lies not in what was stated, but in what was omitted. Where there is evidence that the negligence of more than one person may have proximately caused the plaintiff's injuries, we think the judge has a duty to explain to the jury that there may be multiple proxi-

mate causes and that a finding of negligence on the part of one person does not necessarily exculpate the others.

The inconsistent decision of the jury justifies the granting of judgment notwithstanding the verdict. The judgment of dismissal must be reversed and the matter remanded for resolution of the issues of contributory negligence and damages. Insofar as they relate to retrial of these issues, we will address other matters raised in the appeal.

First, Brashear argues that the trial court erred when it instructed the jury that electric companies owe only a duty of reasonable care rather than the highest degree of care humanly possible. He asserts that the amount of current in the lamp pole was sufficient to kill or render a person unconscious and that in addition, since the wire was 21 feet 7 inches above the ground, the fall from even a slight shock would increase the danger and therefore the duty of care owed to others by Puget Power. Brashear contends that this error was compounded when the court instructed the jury that Puget Power is liable for the acts of its streetlamp maintenance contractor only if Puget Power "carries on an activity which threatens a grave risk of serious bodily harm or death unless the instrumentalities used are carefully constructed and maintained."

The court's duty instruction was taken from *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 35 P.2d 749 (1934), which held at page 649:

The care to be exercised by an electric company with respect to its wires is such as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise under the circumstances in order to prevent injury.

The instruction neglected to take into account the additional discussion in *Scott* noting that electricity is an exceptionally dangerous and lethal force, that it is reasonable to presume that people will work around electric wires, and that the utmost care is required to insulate wires and keep them insulated.

> Where death or serious injury may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.

*Scott,* at 651. *See also Vannoy v. Pacific Power & Light Co.,* 59 Wn.2d 623, 369 P.2d 848 (1962) (duty owed by carriers of high voltage power lines is the highest that can be imposed short of insurer's liability). The range of care owed by a utility varies from ordinary care for harmless currents, such as telegraph or telephone wires, to the highest care humanly possible, as with high voltage power lines or ordinarily harmless lines near high tension wires. *Scott,* at 650; *Frisch v. PUD 1,* 8 Wn. App. 555, 507 P.2d 1201 (1973).

The evidence at trial demonstrated that contact with a 90–volt charge could cause muscular contractions making a person incapable of letting go and eventually rendering him unconscious, or that it may "punch" him away from the wire, which in this case did cause a 20–foot fall. The jury should have been instructed further that power companies are held to the highest standard of care in those cases where the current may cause death or serious injury. In this case, where the light standard was over 20 feet above the ground, the comparatively nonlethal shock was capable of causing a serious fall leading to death or severe injury. The jury was correctly, but incompletely, instructed on the duty of care owed by Puget Power. The omission may also have been a factor in the jury's proximate cause decision. *See Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975); *Doyle v. Nor–West Pac. Co.,* 23 Wn. App. 1, 594 P.2d 938 (1979). The incomplete instruction underemphasized Puget Power's liability for the harm caused by its power lines. This potential for misunderstanding was compounded when the court gave instruction 25:

> You are instructed that Asplundh Tree Expert Company is an independent contractor. Generally, one who engages an independent contractor is not liable to others for any negligence of the independent contractor. However, one who carries on an activity which threatens a grave risk of serious bodily harm or death unless the

instrumentalities used are carefully constructed and maintained, and who employs an independent contractor to construct or maintain such instrumentalities, is subject to the same liability for physical harm caused by the negligence of the contractor in constructing or maintaining such instrumentalities as though the employer had himself done the work of construction or maintenance.

The Asplundh Tree Expert Company was hired by Puget Power to maintain the streetlamp. The jury necessarily must have decided that a third party, or the defendant himself, was a proximate cause of the injuries sustained in the fall. It could have concluded that Puget Power was negligent in carrying on a nondangerous street lighting activity, but not liable in the place of its service contractor, Asplundh Tree Expert Company, because Puget Power was not carrying on an activity "which threatens a grave risk of serious bodily harm or death." If that was the jury's finding, the instructions operated impermissibly to pass liability on to others, and is further reason for reversal.

Finally, Brashear challenges other instructions given the jurors: (1) instructions as to administrative safety regulations which Brashear contends are not applicable to him; and (2) an instruction providing that compliance with the state electrical code creates a presumption that the utility conformed to approved safety methods.

██ WAC 296–32 sets forth safety and health standards for telecommunications workers. The standards do not apply to

> installations *under the exclusive control* of electric utilities used for the purpose of communications or metering, or for generation, control, transformation, transmission, and distribution of electric energy, which are located . . . on public highways, streets, roads, etc., or outdoors by established rights on private property.

(Italics ours.) WAC 296–32–200(2)(b). Safety regulations applicable to those facilities are governed by the electrical construction code, WAC 296–44. Since Puget Power is required to follow the regulations of WAC 296–44, Brashear argues that he is not bound by the safety requirements of

WAC 296–32, regulations which make specific provision for the training and protection of telecommunication employees working around power company facilities. Brashear's position is untenable. To excuse him from complying with WAC 296–32 would relieve him of all regulatory responsibility for his own training and safety. The power pole at issue was not under the "exclusive control" of Puget Power since it was a facility shared with other users. Both parties must assume the required responsibility for their safety and the safety of others.

Violation of a WAC safety regulation may constitute negligence per se. *Bayne v. Todd Shipyards Corp.*, 88 Wn.2d 917, 568 P.2d 771 (1977). Before the applicable safety regulation is provided the jury, evidence must be introduced that the terms of the regulation were violated. *See Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 570 P.2d 438 (1977) (instruction as to a regulation requiring protective eyewear when eye injuries are probable is appropriate if evidence demonstrates plaintiff was aware of a probability of injury); *Berry v. Coleman Sys. Co.*, 23 Wn. App. 622, 596 P.2d 1365 (1979). Those cases restate the rule that evidence must be presented which would support a proposed instruction; in the case of a violation of an administrative safety regulation, evidence that the terms of the regulation were violated must be presented before the regulation and negligence per se instructions are justified. *Teagle v. Fischer & Porter Co., supra.* Contrary to Brashear's argument on appeal, he is not excused from complying with the safety regulations if he was not aware of the specific regulation or did not appreciate the danger involved, and the jury should not be so instructed. If evidence of a safety violation is presented, the instruction may be given and the issue as to whether the terms of the regulation were actually violated is left to the jury after argument by counsel.

Regarding compliance with the electrical code, instruction 19 provided:

Compliance with provisions of the administrative regulations within the Washington Electrical Construction

Code creates a presumption that an electric company conformed with approved methods of construction and safety.

If you believe from the evidence that defendant has not complied with the provisions of the Washington Electrical Construction Code you will disregard the presumption.

Brashear argued for an instruction providing that compliance with the electrical code met the minimum statutory requirements but did not prevent a finding of negligence where circumstances require additional precautions.

RCW 19.28.060, relating to electrical installations, provides that "compliance with such rules, regulations and standards shall be prima facie evidence of compliance with the provisions of this chapter." The standards are set forth in WAC 296–44, parts of which were furnished the jury. Brashear could rebut the presumption through evidence and argument. The instruction was proper. *Wray v. Benton Cy. PUD*, 9 Wn. App. 456, 513 P.2d 99 (1973).

We reverse and remand for entry of judgment n.o.v. and retrial as to the issues of contributory negligence and damages.

DURHAM, A.C.J., and RINGOLD, J., concur.

Reconsideration denied January 4, 1983.

Review granted by Supreme Court March 29, 1983.