[No. 29168-8-I.   Division One.   April 4, 1994.]

MICHAEL D. CRAMER, ET AL, *Appellants*, v. THE DEPARTMENT OF HIGHWAYS, *Respondent*.

---

*David J. Balint, Martin D. Fox,* and *DeFunis & Balint, P.S.; Eric R. Draluck,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Linda M. Gallagher, Assistant,* for respondent.

WEBSTER, C.J. — The Cramers appeal a judgment entered on a jury verdict that although the State of Washington was negligent, such negligence was not the proximate cause of Michael Cramer's motorcycle crash or resulting injuries. They argue that it was an abuse of discretion to exclude photographs of the road and the court's jury instructions were contrary to and constituted comment on the evidence. We disagree.

## FACTS

On June 19, 1988, Cramer and Edwards decided to go on a motorcycle ride. Cramer was driving on a learner's permit and Edwards was the supervising rider. While at a Clear Lake tavern, Edwards assured Cramer that he would take the lead and set a 45 m.p.h. pace. A witness saw the pair exit the tavern: Edwards almost fell over while trying to kick start his motorcycle; Cramer almost fell off his motorcycle as he maneuvered through the low speed curve just south of the tavern. Within 2 miles of the tavern, Edwards was so far ahead of Cramer that he was out of sight of police officers who saw Cramer speeding at 60 to 70 m.p.h. into the accident curve. He fell on the outside of that curve and sustained a head injury. Cramer had a .1 blood alcohol level at the time of the accident.

At trial Cramer claimed the State was negligent in maintaining the curve where he fell off his motorcycle. He alleged that: (1) the curve lacked an advisory speed placard, and (2) that a pavement crack had deteriorated to such an extent that it could have captured and tipped the front wheel of his motorcycle.

State maintenance personnel did "crack sealing" work shortly after Cramer's accident to prevent water from getting into the reflective cracking where it could further deteriorate the roadway.[1] Evidence varied as to the extent of the crack at

---

[1] A reflective crack results when a roadway originally constructed with concrete panels is resurfaced with asphalt. Over time, movement of the concrete panels below results in their cracks and edging being "reflected" as cracks in the asphalt above. On Highway 9, the reflective cracking existed across the highway at the ends of the underlying panels, and along the highway, as lanes were widened to 11 feet each by asphalt overlay of the narrower concrete panels below.

the time of the accident. Police and fire department officers attending the scene observed no defect to which Cramer's accident could be attributed. Steven O'Neill, who resided with his parents on property adjacent to the highway curve, testified that the crack was about 20 to 30 feet long with a "real wide" crack for about 12 feet, between 4 and 6 inches wide and 6 inches deep in places. A road survey diagram of the accident curve made after the seal repair showed a 4- to 6-inch-wide crack for a distance of 20 feet. The measurements showed only one location, south of the midpoint of the curve, where the crack was wide enough to allow the front tire of Cramer's motorcycle to enter the crack.

Photographs of the accident scene were taken on July 27 and August 4, 1988. The State objected to use of the photos claiming they evidenced remedial repair and misrepresented what the crack looked like at the time of the accident. The court excluded the photographs ruling that they were being introduced to prove negligence, the actions of the State in sealing the crack after the accident were in part remedial, and such acts are not admissible under ER 407.

### DISCUSSION

■ The Cramers claim the court erred in excluding photographs. "Absent a showing of prejudice to the outcome of the trial, an error does not constitute grounds for reversal." *Rice v. Janovich*, 109 Wn.2d 48, 63, 742 P.2d 1230 (1987). Here, the issue was the State's negligence in maintaining the highway where the accident occurred. Any error in excluding the photographs was harmless since the jury found the State was negligent and reversal is not required.

■ The Cramers also claim that jury instruction 16A was a comment on the evidence implying that the measurements of the Appellants' witnesses were suspect. Although the instruction is mentioned several times in Cramer's brief, they provide no authority or legal argument as required by RAP 10.3(a)(5). As such they are not entitled to consideration of this claim. *King Aircraft Sales, Inc. v. Lane*, 68 Wn.

App. 706, 717, 846 P.2d 550 (1993).[2] Even if we were to consider the claim, the accuracy of measurements of the pavement crack addresses the State's negligence in maintaining the road surface. Again, since the State was found to be negligent, any error in giving the instruction was harmless.

The Cramers next claim the court's jury instructions concerning intervening negligence were unsupported by the evidence and created a misleading issue of proximate cause. They suggest that the intervening negligence must be established as unforeseeable as a matter of law before the court may give jury instructions on proximate and intervening causation.[3]

■■ In reviewing a challenge to jury instructions, we inquire whether the trial court abused its discretion by giving or refusing to give certain instructions. *Walker v. State*, 67 Wn. App. 611, 615, 837 P.2d 1023 (1992), *rev'd on other grounds*, 121 Wn.2d 214, 848 P.2d 721 (1993). Instructions are not erroneous if they " '(1) permit each party to argue [the] theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law.' " *Walker*, 67 Wn. App. at 615 (quoting *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 194, 668 P.2d 571 (1983)).

■■ "Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can reasonably be foreseen by the defendant; only intervening acts which are *not* reasonably foreseeable are deemed superseding causes." *anderson v. Dreis & Krump Mfg. Corp.*, 48 Wn. App. 432, 442, 739 P.2d

---

[2]In addition, we note that Cramer's counsel agreed to an oral instruction substantially the same as instruction 16A at the time the court ruled it would admit evidence to clarify the accuracy or relevancy, if any, of the measurements taken after the change in the road surface.

[3]The argument is not directly stated. Cramer argues that because the negligent conduct alleged by the State was unquestionably foreseeable and such conduct cannot constitute a superseding cause, the court erred in giving instructions on proximate causation.

1177, *review denied*, 109 Wn.2d 1006 (1987). A superseding cause exists if the acts of the plaintiff or a third party are " 'so highly extraordinary or unexpected that [they] can be said to fall without the realm of reasonable foreseeability as a matter of law'. If the acts . . . are within the ambit of the hazards covered by the duty imposed upon the defendant, they are foreseeable and do not supersede the defendant's negligence." (Citation omitted.) *Brashear v. Puget Sound Power & Light Co.*, 33 Wn. App. 63, 69, 651 P.2d 770 (1982), *rev'd on other grounds*, 100 Wn.2d 204, 667 P.2d 78 (1983). "The foreseeability of an intervening act, unlike the determination of legal cause in general, is ordinarily a question of fact for the jury." *anderson*, at 443. However, where the defendant's negligence, if any, was superseded by the action of the plaintiff or third party as a matter of law, a trial court may grant summary judgment for the defendant. Where the court cannot make such a conclusion the issue is properly submitted to the jury. *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 396-97, 558 P.2d 811 (1976).

Here, substantial evidence supported the jury's finding that the State's negligence was not the proximate cause of Cramer's injuries. Considerable evidence indicated that Cramer fell off his motorcycle before arriving at the deteriorated portion of the roadway. A police officer testified he saw Cramer's motorcycle down and sliding at a point north of the deteriorated pavement crack that Appellants' experts claimed caused the crash. Another witness testified that he observed a motorcycle tire track on the dirt shoulder leading up to the victim and the motorcycle, 300 feet north of the deteriorated portion of the roadway. Other evidence indicated excessive speed of 60 to 70 m.p.h., intoxication, lack of training or skills of a novice rider on how to control a large street motorcycle, and that Edwards recklessly disregarded duties he had assumed toward Cramer.

The intervening recklessness (intoxication, speeding, etc.) of Cramer and Edwards was not foreseeable, and the court was justified in refusing to find legal causation between the defects in the road and the accident. *Cunningham v. State*,

61 Wn. App. 562, 571-72, 811 P.2d 225 (1991).[4] Since the court did not conclude that Cramer's and Edwards' conduct was a superseding cause as a matter of law the issue was properly submitted to the jury. The instructions allowed the State to argue its theory of the case, did not mislead, and properly informed the jury of the law.

Cramer also claims the court erroneously instructed the jury regarding negligence of a nonparty. He alleges there was insubstantial proof that Edwards had undertaken to train Cramer, and thus, jury instruction 32 incorrectly implied that Edwards had negligently trained Cramer, and instructions 33 and 34 impermissibly suggested that the action involved the negligence of more than one entity.

RCW 4.22.070 requires that "[i]n all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages". Any fault attributable to nonparty "entities" reduces the plaintiff's recovery proportionally. RCW 4.22.070(1)(b).

At trial, Edwards denied training Cramer. However, he knew that Cramer was a novice driver and had failed his endorsement test, was driving on a learner's permit, and admitted being the supervising rider on the day of the accident. Once Edwards voluntarily assumed the duties of supervision, there was a duty to exercise reasonable care. *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 299, 545 P.2d 13 (1975). A State Patrol officer testified that as the supervising rider, it was improper for Edwards to ride ahead of learner Cramer because it resulted in a catch-up situation drawing Cramer into the curve too fast. Thus, as the super-

---

[4]In *Klein v. Seattle*, 41 Wn. App. 636, 639, 705 P.2d 806, *review denied*, 104 Wn.2d 1025 (1985), the court refused to hold that a negligent road design legally caused an accident in which a speeding driver with a blood alcohol level of .04 percent crossed the center line and collided with another vehicle. The court reached a similar result in *Braegelmann v. County of Snohomish*, 53 Wn. App. 381, 385-86, 766 P.2d 1137 (refusing to find legal causation because the County had no duty to foresee "extreme negligence" of a speeding and intoxicated driver who crossed the center line and struck another car), *review denied*, 112 Wn.2d 1020 (1989).

vising rider, Edwards was an entity which may have contributed to the accident within the meaning of RCW 4.22.070. We find no error in the court's instruction regarding negligence attributable to a nonparty since it is a question of fact whether Edwards' actions were the proximate cause of Cramer's injuries and the jury was presented evidence on the issue.

The State claims it was contrary to public policy and inconsistent with Washington law of comparative fault for the trial court to exclude evidence of Cramer's failure to wear a protective helmet. It requests review of the helmet issue only if the case is remanded for retrial. We do not reach the merits of this issue.

We affirm.

KENNEDY, J., and FORREST, J. Pro Tem., concur.